IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TERRENCE BROWNLEE,

        Plaintiff,            No. 2:06-cv-2680 LKK EFB P

        vs.

D.L. PORTER, et al.,

        Defendants.        FINDINGS AND RECOMMENDATIONS

        Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983.  His sole remaining claim is against defendant Friedrichs for alleged violations of plaintiff's Eighth Amendment rights.  *See* Dckt. No. 22.  Presently before the court are plaintiff's motion for a temporary restraining order and defendant's motion for summary judgment.  Dckt Nos. 66, 68.  For the reasons that follow, plaintiff's motion for a temporary restraining order should be denied and defendant's motion for summary judgment should be granted.

**I.    Background**

        This action proceeds on the second amended complaint filed December 26, 2007.  Dckt. No. 14.  Plaintiff alleges that, on November 18, 2005, defendant Friedrichs lifted a "medical

////

////

1

hold" that had been placed on plaintiff. Dckt. No. 14 at 5.[1] With the hold lifted, plaintiff was transferred from Soledad State Prison ("Soledad") to Folsom State Prison ("Folsom"). *Id.* According to plaintiff, at the time of the transfer, he had a pending appointment for lumbar fusion surgery. *Id.* Plaintiff claims that, by lifting the medical hold thereby clearing the way for plaintiff's transfer, defendant delayed plaintiff's necessary back surgery, causing him injury. *Id.*

The court dismissed plaintiff's amended complaint on screening for failure to state a claim, but the U.S. Court of Appeals for the Ninth Circuit reversed as to plaintiff's claim against defendant Friedrichs. Dckt. Nos. 15, 17, 22. The undersigned then recommended that the court enter summary judgment in defendant's favor after concluding that plaintiff had not proffered evidence that the surgery was delayed or that he was injured by any delay. Dckt. No. 61 at 5-6. The district judge declined to adopt that recommendation, finding that it was defendant's burden to show that the surgery had not been delayed, that defendant had not discharged that burden, and that plaintiff had proffered evidence through his declaration that the delay caused him nerve injury. Dckt. No. 63 at 2. Defendant then sought leave to file a second summary judgment motion, which the court granted.

## II.     Plaintiff's Motion for a Temporary Restraining Order

Plaintiff has filed a motion for a temporary restraining order alleging that non-party Miranda has deprived him of a cane and "ADA vest" in retaliation for plaintiff's filing of an inmate appeal, "medical forms," and two lawsuits. Dckt. No. 66. Plaintiff also alleges that he "is unable to get any copys [sic] due to lock down, and the law library is only open 3 days here at High Desert State Prison." *Id.* Presumably, plaintiff seeks an order directing Miranda or other prison staff to return his cane and vest and allow him to make copies and/or visit the law library more frequently.

////

---

[1] Page numbers cited herein refer to those assigned by the court's electronic docketing system and not those assigned by the parties.

2

1    Plaintiff has not addressed the applicable standard for granting a temporary restraining
2 order.  His factual allegations are outside the scope of this case and simply do not pertain to
3 merits in this action or bear on whether he is likely to prevail in this case.  Nor do his allegations
4 in the motion relate to persons who are parties to this action (nor is there any indication that they
5 are defendant's officers, agents, servants, employees, attorneys, or are acting in concert with
6 defendant).  Fed. R. Civ. P. 65(d) (providing that an injunction binds the parties; the parties'
7 officers, agents, servants, employees, attorneys, and other persons who are in active concert or
8 participation with these people); *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1985) ("A federal
9 court may issue an injunction if it has personal jurisdiction over the parties and subject matter
10 jurisdiction over the claim; it may not attempt to determine the rights of persons not before the
11 court.").

12    Requests for temporary restraining orders which are not ex parte and without notice are
13 governed by the same general standards that govern the issuance of a preliminary injunction.
14 *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977); *Los Angeles*
15 *Unified Sch. Dist. v. United States Dist. Court*, 650 F.2d 1004, 1008 (9th Cir. 1981) (Ferguson, J.
16 dissenting); *Century Time Ltd. v. Interchron Ltd.*, 729 F. Supp. 366, 368 (S.D.N.Y. 1990).

17    A preliminary injunction will not issue unless necessary to prevent threatened injury that
18 would impair the court's ability to grant effective relief in a pending action.  *Sierra On-Line, Inc.*
19 *v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984); *Gon v. First State Ins. Co.*, 871
20 F.2d 863 (9th Cir.1989).  A preliminary injunction represents the exercise of a far reaching
21 power not to be indulged except in a case clearly warranting it.  *Dymo Indus. v. Tapeprinter,*
22 *Inc.*, 326 F.2d 141, 143 (9th Cir.1964).  In order to be entitled to preliminary injunctive relief, a
23 party must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer
24 irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor,
25 and that an injunction is in the public interest."  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127
26 (9th Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, __ U.S. __, 129 S.Ct. 365, 374

(2008)). The Ninth Circuit has also held that "sliding scale" approach it applies for the showing that must be made regarding the chance of success on the merits survives *Winter* and continues to be valid. *Alliance for Wild Rockies v. Cottrell*, __ F.3d __, 2010 WL 2926463, *3-4 (filed July 28, 2010). Under this sliding scale the elements of the preliminary injunction test are balanced. As it relates to the merits analysis, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits. *Id.*

In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

Plaintiff's motion presents nothing to indicate probability of success on the merits of his case, or what harm he faces from his current inability to make copies or access the library only three days per week. Nor has he shown that the balance of equities tips in his favor, and that an injunction is in the public interest. Accordingly, the motion for a temporary restraining order will should be denied.

### III. Defendant's Motion for Summary Judgment

#### A. Standards

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

4

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district

5

court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorable to that party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must

6

adduce evidence of a factual predicate from which the inference may be reasonably drawn. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted); *Celotex.*, 477 U.S. at 323 (If the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine issue). Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

Concurrent with the instant motion, defendant advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. Dckt. No. 68; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**B.  Analysis**

The Eighth Amendment of the U.S. Constitution protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see*

*also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A serious medical need exists if the failure to treat plaintiff's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  *Jett*, 439 F.3d at 1096.  An officer has been deliberately indifferent if he was (a) subjectively aware of the serious medical need and (b) failed to adequately respond.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

Neither a defendant's negligence nor a plaintiff's general disagreement with the treatment he received suffices to establish deliberate indifference.  *Estelle*, 429 U.S. at 106; *Jackson v. McIntosh*, 90 F.3d 330, 331 (9th Cir. 1996); *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).  Evidence that medical caregivers disagreed as to the need to pursue one course of treatment over another is also insufficient, by itself, to establish deliberate indifference.  *Jackson*, 90 F.3d at 332.  Rather, the plaintiff must show that the course chosen by the medical providers was medically unacceptable under the circumstances *and* that "they chose this course in conscious disregard of an excessive risk to plaintiff's health."  *Jackson*, 90 F.3d at 332 (citing *Farmer v. Brennan*, 511 U.S. at 835-36.  When a prisoner alleges a delay in medical treatment, he must show the delay caused an injury.  *See McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); *see also Wood v. Housewright*, 900 F.2d 1332, 1334-35 (9th Cir. 1990) (several day delay in treatment did not violate Eighth Amendment where there was no emergency and given plaintiff's condition, i.e., a severe shoulder injury, the only remedy immediately available was painkillers).

Defendant argues that he is entitled to summary judgment because the undisputed facts show that he was not deliberately indifferent to plaintiff's medical needs.  According to defendant, he did not cause plaintiff's surgery to be unconstitutionally delayed by lifting the medical hold because: (1) he did not know surgery was recommended when he lifted the hold, (2) the surgery was not an emergency, and (3) he expected medical staff at Folsom to continue providing constitutionally-adequate care to plaintiff following the transfer.

Plaintiff contends that, when defendant lifted the medical hold on November 18, 2005, plaintiff had been scheduled for surgery, or at least that defendant had known since a June 2005 MRI that plaintiff needed surgery. Plaintiff's medical records reveal that no physician recommended surgery until November 17, 2005, however, when a Dr. Ramberg did so. Dckt. 14-2 at 38. Plaintiff relies solely on a June 29, 2005 MRI report, but that report nowhere mentions surgery. Instead, the report simply describes an MRI scan and concludes with the following "Impression":

1. Degenerative disc disease L4-5 and L5-S1.

2. Disc extrusion/herniation L5-S1 on the right side.

3. Uptake contrast enhancement is seen along the right side of posterior spinal process and facet joint of L4-5 and L5-S1 suggesting previous post surgical scar versus inflammatory process versus recurrent disc herniation L5-S1 on the right side. Clinically correlation is suggested.

Dckt. No. 74 at 23. Plaintiff argues that the sentence, "Clinically correlation is suggested," indicates that the author of the report recommends surgery. Nothing in the text of that language suggests such a conclusion and plaintiff provides no basis for that interpretation. On its face, the sentence (or, for that matter, the rest of the report) does not say anything about surgery. Instead, the quoted phrase suggests that clinical observations by the physician on physical examination be considered as well as the MRI observations. There nothing in the quoted sentence that could lead a reasonable fact-finder to conclude that defendant chose to ignore a recommendation in the report for surgery.

Defendant asserts that he did not see Dr. Ramberg's November 17, 2005 report recommending surgery until after November 18, 2005, when he lifted plaintiff's medical hold. Plaintiff argues that Dr. Ramberg sent the report back with custody staff on November 17. Defendant, on the other hand, cites to a fax-stamped copy of the report indicating that it was received, by someone, on December 9, 2005. Dckt. No. 1 at 34. Viewing the evidence in the light most favorable to plaintiff, it appears that the fax stamp on the report may refer to the date

9

1 it was received by Dr. Toruella at Folsom after plaintiff's transfer, as it also bears his stamp and
2 a handwritten notation, "noted 12/9/05 Toruella." *Id.* Moreover, it is undisputed that defendant
3 did start the surgery approval process on December 2, 2005, seven days before the fax-stamped
4 copy of the report was transmitted. Dckt. No. 68 at 26, Def.'s Decl. ISO Mot. for Summ. J., ¶ 13
5 & Ex. 4. Thus, viewed in plaintiff's favor, a fact-finder could conclude that defendant saw Dr.
6 Ramberg's report recommending back surgery before he lifted the medical hold clearing the way
7 for plaintiff's transfer to another institution.

8 Defendant declares that he did not believe that plaintiff's need for the back surgery was
9 an emergency, did not schedule the surgery because plaintiff had been transferred, and expected
10 Folsom staff to continue plaintiff's care, uninterrupted. Def.'s Decl. ¶¶ 12-13. Plaintiff cites to
11 the June 2005 MRI report to support his claim that the surgery *was* an emergency, but, as noted
12 above, that report says nothing of the kind. Additionally, there is no evidence that defendant
13 knew or should have known that plaintiff's transfer would cause the scheduling of the surgery to
14 be delayed. The evidence shows that Folsom physician Dr. Toruella received Dr. Ramberg's
15 November 17, 2005 report recommending surgery within two days of plaintiff's transfer to
16 Folsom. Plaintiff states that "Dr. Toruella could not use the report from Dr. Ramberg, so
17 Plaintiff had to begain [sic] over with a M.R.I. from doctor in Folsom area, this delayed Plaintiff
18 once again from having his operation." Dckt. No. 74 at 7. Plaintiff does not address or attempt
19 to explain why Dr. Toruella could not use Dr. Ramberg's report and required a new MRI, or,
20 more importantly, provide any evidence that defendant knew or should have known that Dr.
21 Toruella could not or would not use Dr. Ramberg's report and would order a new MRI rather
22 than following defendant's course of obtaining approval for the surgery. In short, plaintiff does
23 not present evidence that a reasonable fact finder could rely on to find that defendant knowing
24 took action to delay plaintiff's surgery or otherwise "chose this course in conscious disregard of
25 an excessive risk to plaintiff's health." *Jackson*, 90 F.3d at 332.
26 ////

In sum, defendant has submitted evidence that he expected that plaintiff's caregivers at Folsom would continue his medical care, uninterrupted. While plaintiff has submitted evidence that there was an interruption, in that plaintiff's Folsom physician did not immediately seek approval of surgery for plaintiff, plaintiff has produced no evidence that the defendant herein knew or should have known that this interruption would occur, or that it was unreasonable for defendant to expect no interruption. Thus, there is no evidence upon which a reasonable factfinder could conclude that defendant was aware of facts showing a substantial risk that plaintiff would be harmed if he were transferred and that defendant actually drew that inference. *Farmer*, 511 U.S. at 838 (to be deliberately indifferent, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk fo serious harm exists, and he must also draw the inference."). As plaintiff has not raised a triable issue of fact that defendant's conduct was deliberately indifferent, the undersigned recommends that the motion for summary judgment be granted.

**IV.  Recommendations**

Accordingly, it is hereby RECOMMENDED that:

1. Plaintiff's June 13, 2012 motion for a temporary restraining order (Dckt. No. 66) be denied;

2. Defendant's July 18, 2012 motion for summary judgment (Dckt. No. 68) be granted;

3. The Clerk be directed to enter judgment for defendant and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

////

////

11

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 27, 2013.

/s/ Edmund F. Brennan
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE